UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
RHONDA RASHAN PETERS,

       Plaintiff,

   - against -

CAROLYN W. COLVIN, Commissioner of
Social Security,

       Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

15 Civ. 4834 (BMC)

**COGAN**, District Judge.

  Plaintiff seeks judicial review, pursuant to 2 U.S.C. § 405(g), of the decision of the Commissioner of Social Security (the "Commissioner") that she is not disabled, and thus not entitled to disability benefits. The Administrative Law Judge found that plaintiff has severe impairments consisting of status-post cervical cancer, depression, and history of substance abuse. However, the ALJ further found that these impairments do not render her disabled. Following the ALJ's decision, plaintiff submitted additional medical evidence to the Appeals Council, but it found that this evidence did not require reexamination of the ALJ's decision.

  This action is before me on the Commissioner's and plaintiff's cross-motions for judgment on the pleadings. I hold that the additional evidence submitted to the Appeals Council may cast a different light on this case, and therefore remand it for reconsideration in light of that evidence.

## BACKGROUND

  Plaintiff filed an application for supplemental security income on January 12, 2011. The claim was initially denied and plaintiff filed a written request for a hearing. During a video-

hearing, plaintiff testified that she has been depressed since she was diagnosed with cervical cancer. Plaintiff testified that she doesn't cook or clean, she rarely shops, she doesn't leave the house often, and she can only walk one or two blocks. Plaintiff also testified that she gets panic attacks two to three times a week. After two video-hearings, the ALJ issued a decision on January 6, 2014, finding that plaintiff is not disabled.

## I. Plaintiff's Medical History

Plaintiff, who is currently thirty-five years old, was diagnosed with cervical cancer in June 2010. In September 2010, plaintiff underwent lymph node sampling and a trachelectomy, which is the surgical removal of the uterine cervix. Metastatic carcinoma was found in her left external iliac node. Plaintiff was treated with pelvic radiation, intracavity brachytherapy, and four cycles of chemotherapy.[1]

The first evidence that plaintiff sought medical help for psychiatric problems is contained in two Federation Employment & Guidance Service ("FEGS")[2] forms from late 2011 and early 2012. One form, titled "Behavioral Health Services Adult Assessment & Psychosocial," filled out by E. Klemmer, a Licensed Clinical Social worker ("LCSW"), notes that plaintiff reported depressive symptoms and anxiety. The second form, a "Psychiatric Evaluation" completed by Christina Waniek, staff psychiatrist, notes that plaintiff reported that she has not felt well since

---

[1] Plaintiff alleges that she has a disabling condition due to abdominal pain. There is evidence in the record that after the second cycle of chemotherapy, plaintiff reported experiencing hot flashes and abdominal pain. Plaintiff's treating physician, Dr. Katherine Bell-McGuinn, advised that plaintiff's hot flashes were likely due to early menopause, secondary to her pelvic radiation. There is also evidence that plaintiff visited Kings County Hospital Center emergency room twice in 2013, complaining of abdominal pain. The ALJ, however, found that plaintiff's claims were not credible because, after an evaluation in July 2011, Dr. Jerome Caiati found that plaintiff's abdomen was soft and non-tender and that her sitting, standing, walking, reaching, pushing, climbing, and bending abilities were unrestricted. I find that the Commissioner's decision that plaintiff's abdominal pain is not a disabling condition is supported by substantial evidence. This opinion, thus, focuses only on plaintiff's claims of a disabling condition due to her mental impairments.

[2] FEGS is a nonprofit health and human services organization. The two FEGS forms only appear in the record because they are included in plaintiff's file from the Interborough Development & Consultation Center ("IDCC"). There are no other reports or medical files from FEGS.

2

she was treated for cervical cancer. Ms. Waniek found that plaintiff's orientation to time, place and person, immediate retention and recall, recent and remote memory, and concentration/attention span were good, but that her mood was constricted. Ms. Waniek diagnosed plaintiff with major depressive disorder, mild.

Plaintiff also sought medical help for psychiatric problems at the Interborough Development & Consultation Center ("IDCC"). The record contains a June 2013 intake assessment of plaintiff conducted by Sofia Georgoulias, Psy. D. During the intake assessment, plaintiff reported that she has been depressed ever since she was diagnosed with cancer and that she had seen a therapist at FEGS for six months. Dr. Geogoulias found that plaintiff showed symptoms of depressed mood, decreased energy, and grief. She diagnosed plaintiff with major depressive disorder, mild, and recommended that plaintiff be seen for treatment at IDCC.

II.     Consultative Psychiatric Evaluations

In connection with her disability claim, plaintiff underwent two consultative psychiatric examinations by Christopher Flach, Ph. D. During the first evaluation in July 2011, plaintiff described symptoms of depression, reported having anxiety attacks two to three times a week, and admitted to occasional marijuana use. Dr. Flach reported the following results from the mental status exam: (1) plaintiff's speech was fluent and clear; (2) she had coherent and goal directed thought processes; (3) her affect seemed depressed and anxious; (4) her mood seemed dysthymic; (5) her attention and concentration were intact as she was able to perform simple calculations and add by serial threes up to twenty-one; (6) her recent and remote memory skills were intact as she was able to name three out of three objects immediately and two out of three objects after five minutes, and repeat up to four digits backwards; and (7) her cognitive functioning was average.

Based on these results, Dr. Flach found that plaintiff is able to follow simple instructions, maintain a regular schedule, perform complex tasks independently, make appropriate decisions, and adequately relate to others. Dr. Flach diagnosed her with depressive disorder, not otherwise specified, and panic disorder without agoraphobia. He opined that plaintiff's psychiatric problems appear to mildly interfere with her ability to function on a daily basis.

When Dr. Flach evaluated plaintiff a second time, over two years later in October 2013, his assessment of plaintiff was significantly different. After the October 2013 evaluation, Dr. Flach reported that: (1) plaintiff's speech sounded fluent and pressured; (2) her attention and concentration appeared moderately impaired because she had a hard time adding by two's let alone three's; (3) her recent and remote memory skills appeared significantly impaired as she could recall three out of three objects immediately, but no objects after five minutes, and she had a hard time repeating even two digits backwards; and (4) her cognitive functioning was felt to be below average. In addition to a psychiatric evaluation, Dr. Flach also conducted an intelligence evaluation and found that plaintiff's IQ is 53.

Although Dr. Flach found that plaintiff was still able to follow simple instructions, maintain a regular schedule, and make appropriate decisions, he found, after the 2013 evaluation, that plaintiff has moderate to significant problems maintaining attention and concentration, performing complex tasks, relating to others, and dealing with stress. Dr. Flach diagnosed plaintiff with an intellectual disability disorder, not otherwise specified, and major depressive disorder, moderate type. This time he opined that plaintiff's psychiatric problems and intellectual difficulties moderately to significantly interfere with her ability to function on a daily basis.

## III. The ALJ's Findings

The ALJ found that plaintiff's severe impairments consisting of status-post cervical cancer, depression, and history of substance abuse do not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff's status-post cervical cancer does not meet listing 13.23, for cancers of the female genital tract, because, after undergoing surgery, the cancer has not returned. The ALJ also found that plaintiff's mental impairments do not meet or medically equal the criteria of listings 12.04, for affective disorders, or 12.09, for substance addiction disorders, because they do not result in at least two of the following: a marked restriction in activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; and repeated episodes of decompensation, each of extended duration. Despite Dr. Flach's opinion that plaintiff's ability to maintain attention and concentration, perform complex tasks, and relate to others is moderately to significantly impaired, the ALJ found that plaintiff has only moderate restrictions or limitations in activities of daily living, social functioning, and concentration, persistence, or pace. He also found that plaintiff did not experience any episodes of decompensation.

After finding that plaintiff's severe impairments do not meet or equal a listing, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work, with certain limitations, because even though plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, plaintiff's statements as to the intensity, persistence, and limiting effects of her depression and anxiety are not entirely credible. In forming this opinion, the ALJ gave little weight to Dr. Flach's opinions in his 2013 assessment

because he found that they are not supported by objective evidence and are inconsistent with the record as a whole. The ALJ, however, gave some weight to Dr. Flach's opinions in his 2011 assessment because he found that they are consistent with the record as a whole. Thus, the ALJ found that although plaintiff is unable to perform her past relevant work as a music instructor and cashier, she is not disabled because she is capable of making successful adjustments to other work that exists in significant numbers in the national economy.

### IV. The Appeals Council's Denial of Plaintiff's Request for Review

After the unfavorable decision by the ALJ, plaintiff requested a review of the ALJ's decision by the Appeals Council. In her request to the Appeals Council, plaintiff submitted additional medical evidence consisting of panic attack and anxiety questionnaires, dated December 16, 2013, filled out by her treating physician, Dr. Sofia Georgoulias. In responding to the questionnaires, Dr. Georgoulias reported that plaintiff has panic attacks twice a month that are characterized by a sudden unpredictable onset of intense apprehension and impending doom and that she has experienced such panic attacks with the same frequency since 2010. Dr. Georgoulias also reported that plaintiff has generalized and persistent anxiety, accompanied by vigilance and scanning, and has recurrent and intrusive recollections of a traumatic experience that are a source of marked distress. Dr. Georgoulias opined that plaintiff has a marked restriction in activities of daily living, marked difficulties in maintaining social functioning, marked deficiencies in concentration, persistence or pace, and has had repeated episodes of deterioration or decompensation in work-like settings.

The Appeals Council denied plaintiff's request for review, finding that "this information does not provide a basis for changing the Administrative Law Judge's decision." Thus, the ALJ's determination became the Commissioner's final decision.

**DISCUSSION**

Plaintiff's points of error in the instant case are that: (a) the ALJ's finding that plaintiff's impairments do not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, was substantively deficient; (b) the ALJ improperly assessed plaintiff's credibility; and (c) the record lacks substantial evidence to support the ALJ's finding that plaintiff can perform sedentary work, with limitations. I, however, find a separate error requiring remand.

Pursuant to 20 C.F.R. § 404.970(b), a claimant may submit additional evidence to the Appeals Council. The Appeals Council will consider such evidence if it is "new," "material," and "relates to the period on or before the date of the administrative law judge hearing decision." If the Appeals Council denies review of the ALJ's decision, the new evidence "becomes part of the administrative record for judicial review." Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996); see also, Lesterhuis v. Colvin, 805 F.3d 83, 87 (2d Cir. 2015); Noutsis v. Colvin, No. 15-cv-5294, 2016 WL 552585, at *10 n.3 (E.D.N.Y. Feb. 10, 2016).

However, "[w]hen the new evidence submitted to the Appeals Council includes the opinion of a treating physician . . . the Appeals Council must give the same degree of deference to this opinion that an ALJ would be required to give." Garcia v. Comm'r of Soc. Sec., No. 15 Civ. 6544, 2016 WL 5369612, at *3 (S.D.N.Y. Sept. 23, 2016) (citing Snell v. Apfel, 177 F.3d 128 (2d Cir. 2015)); see also Collazo v. Colvin, No. 13 Civ. 5758, 2015 WL 9690324, at *13 (S.D.N.Y. Dec. 22, 2015) (noting that the Appeals Council is bound by the treating physician rule); Knepple-Hodyno v. Astrue, No. 11-cv-443, 2012 WL 3930442, at *9 (E.D.N.Y. Sept. 10, 2012) ("When new materials are submitted from treating physicians, the Appeals Council is obligated to provide an explanation for its decision not to afford controlling weight to an assessment apparently provided by Plaintiff's treating physician.") (internal quotation marks and

citations omitted). Under the treating physician rule, the Commissioner must give a treating physician's opinion "'controlling weight'" regarding the nature and severity of impairments if her opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the claimant's] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). Even when a treating physician's opinion is not entitled to controlling weight, "the regulations require the ALJ to consider several factors in determining how much weight it should receive." Id. (citing 20 C.F.R. § 404.1527(c)(2)). After considering the required factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Here, the Appeals Council was required to consider the panic attack and anxiety questionnaires plaintiff submitted because they met all three requirements for the consideration of additional evidence. First, the evidence is new because Dr. Georgoulias' opinion as to the seriousness of plaintiff's anxiety and depression was not part of the record in front of the ALJ. Second, the evidence is material because Dr. Georgoulias' opinions weigh directly on whether plaintiff has the necessary marked restrictions to meet the requirements of a listing in 20 CFR, Part 404, Subpart P, Appendix 1. Third, the questionnaires relate to the relevant time period because they are dated prior to the ALJ's decision – the ALJ's decision is dated January 6, 2014 and the questionnaires are dated December 16, 2013 – and are retrospective concerning plaintiff's symptoms beginning in 2010.

Because the additional evidence was an opinion by plaintiff's treating physician, the Appeals Council was required to consider the evidence under the treating physician rule. Although the Appeals Council stated that it considered the additional evidence, it provided no explanation for why it rejected Dr. Georgoulias' opinion on plaintiff's condition and it failed to set forth the weight it assigned to her opinion. It simply stated that it found that such information did not provide a basis for overturning the ALJ's decision. The Appeals Council, thus, failed to appropriately consider and weigh Dr. Georgoulias' opinion. See Collazo v. Colvin, No. 13 Civ. 5758, 2015 WL 9690324, at *13 (S.D.N.Y. Dec. 22, 2015) (finding that the Appeal Council's boilerplate statement that it reviewed the additional evidence did not satisfy the regulations' requirements for consideration of a physician's opinion).

Therefore, the case is remanded for consideration in light of the additional evidence. See Garcia v. Comm'r of Soc. Sec., No. 15 Civ. 6544, 2016 WL 5369612 (S.D.N.Y. Sept. 23, 2016) (remanding for further proceedings where the Appeals Council failed to appropriately consider a treating physician's opinion); Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. 2009) (holding that when the Appeals Council fails to consider new and material evidence, "the proper course for the reviewing court is to remand the case for reconsideration in light of the new evidence."). On remand, the Commissioner should specifically address the new evidence in accordance with the treating physician rule, as discussed above.

Specifically, the Commissioner should consider whether plaintiff's mental impairments meet or equal a listing in 20 C.F.R Part 404, Subpart P, Appendix 1, in light of Dr. Georgoulias' opinion. Although the determination of whether plaintiff meets or equals a listing is reserved to the Commissioner, the ALJ must still consider the physician's opinion regarding the criteria for a listing. See 20 C.F.R. § 404.1527(d)(2); Hendricks v. Comm'r of Soc. Sec., 452 F. Supp. 2d

9

194, 199 (W.D.N.Y. Sept. 19, 2006); Torres v. Colvin, No. 12 Civ. 6527, 2014 WL 241061 (S.D.N.Y. Jan. 22, 2014). The ALJ found that plaintiff did not have marked restrictions in at least two of the four categories in "Paragraph B", required for listings of mental disorders. However, Dr. Georgoulias' opinion is that plaintiff has marked restrictions in all four of the categories, which corroborates Dr. Flach's opinion that plaintiff's psychiatric problems moderately to significantly interfere with her ability to function on a daily basis. Thus, in light of Dr. Flach's and Dr. Georgoulias' opinions, the Commissioner may find that plaintiff's mental impairments meet or medically equal a listing.

On remand, the Commissioner should also consider whether plaintiff has the residual functional capacity to perform sedentary work, with limitations, in light of Dr. Georgoulias' opinion. The ALJ previously found that plaintiff could perform sedentary work in part because the record did not support her allegations about the intensity, persistence, and limiting effects of her symptoms. In reaching this conclusion, the ALJ gave little weight to Dr. Flach's opinions in his 2013 evaluation because he found that they were inconsistent with the record as a whole. However, when Dr. Georgoulias' opinion is added to the record, Dr. Flach's opinions in his 2013 evaluation should be afforded greater weight because they are supported by Dr. Georgoulias. In turn, the record better supports plaintiff's claims about the persistence, intensity, and duration of her symptoms. Thus, when Dr. Georgoulias' opinion is properly considered, the Commissioner may very well find that plaintiff's claims are credible and that she is not capable of performing sedentary work.

## CONCLUSION

**P**laintiff's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and this case is remanded for further proceedings in accordance with this opinion. The Clerk is directed to enter judgment accordingly.

**SO ORDERED.**

                                              U.S.D.J.

Dated: Brooklyn, New York
         November 21, 2016